UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,         Hon. Julian Abele Cook, Jr.
                     Case No. 07-20400
v.

DANNY NEACE

   Defendant.

ORDER

On August 14, 2007, a grand jury returned a seventeen-count indictment in which the

Defendant, Danny Neace and fifteen other persons[1] were charged with having committed a variety

of criminal offenses which incorporated alleged racketeering activities, all contrary to existing

federal law. In its indictment, he was specifically accused by the grand jury of conspiring to commit

an assault with a dangerous weapon, as well as committing an assault with a dangerous weapon, in

violation of 18 U.S.C. § 1959(a) and 18 U.S.C. § 1959(a)(3), respectively. On January 24, 2008,

Neace filed a motion, seeking to obtain a severance from his Co- Defendants under Rules 8(b) and

14(a) of the Federal Rules of Criminal Procedure, respectively.  His motion has been opposed by

the Government.

Thus, the issues before the Court are, in essence, twofold: namely, (1) whether Neace's trial

has been properly joined with the other Defendants under Fed. R. Crim. P. 8(b), and if so, (2)

---

[1]In addition to Neace, the grand jury has identified the following persons in its indictment:
Leroy Frasier, Norman Box, David Dorris, Ramon Rios, Bruce Wendel, William Elston, Robert
Castillo, Michael Radke, Edward Gallagher, William Guinn, Mark Guerra, Kenneth Creslaw,
William Merfert, William Thomas McCowan and Kim Galaviz.

whether a joint proceeding will prejudice his right to a fair trial according to Fed. R. Crim. P. 14(a).

I

The Government contends that Neace committed these felonies during his affiliation with an organization which was known as the American Outlaws Association (AOA). According to the indictment, the AOA is an international organization whose members have engaged in a variety of criminal activities such as acts of assault, gambling, drug trafficking and firearm offenses. The Government also alleges that the AOA maintains units throughout the nation, including operations in Michigan (Detroit, Wyandotte, Bay City and Grand Rapids) and Indiana (Fort Wayne and Indianapolis).

According to the Government, the AOA exists to (1) enrich its members and associates through the employment of criminal activities; (2) preserve and protect its own power, territory and profits by means of intimidation, violence and threats of violence; (3) promote and enhance the organization and its members and/or associates; (4) keep its victims fearful with acts of threats and violence; and (5) enforce discipline among its members through violent acts.

Furthermore, the Government submits that an individual who seeks to join the AOA must initially participate as an associate member. Thereafter, the associate is required to serve a probationary term before being favorably considered for full membership. Once selected with a full membership status, the person must pay a monthly stipend, which may be redistributed according to need throughout the organization. The Government maintains that the AOA (1) engages in activities which frequently require interstate travel, affect interstate as well as foreign commerce, all of which amounts to racketeering activity, (2) owns realty and other property interests, and (3) resolves a variety of issues through a voting process during its meetings.

In  Count One of the indictment, Neace and five other persons (namely, Leroy Frasier,

Norman Box, David Dorris, Ramon Rios and Bruce Wendel) were charged with conspiring to assault members of the Hells Angels Motorcycle Club with a dangerous weapon in violation of 18 U.S.C. § 1959(a)(6). The indictment identified the alleged conspirators as having participated in a criminal enterprise in 2006 (February through April) for the purpose of facilitating the entry into or maintaining and increasing their respective positions within the AOA.

In Count Two, the Government has accused these same six individuals with having assaulted several members of the Hells Angels Motor Cycle Club on or about April 1, 2006 with dangerous weapons, including a cane, a hammer and motorcycle parts.

In the remaining counts, the Government has advanced charges of felonious conduct against the other persons who were identified as Defendants in the indictment. Counts Three and Four pertain to accusations of conspiracy and acts of assault in furtherance of the AOA's agenda. Counts Five through Ten involve drug distribution and weapons offense issues. The remaining charges focus upon claims of narcotic distribution and an assorted array of weapon offenses.

II

In relying upon the Federal Rules of Criminal Procedure, Neace has expressed a concern that he may be convicted by a jury on the basis of guilt by his association with the other members of this alleged conspiracy. Thus, he believes that a severance of this case would be proper in light of the complexity of the collective charges and his minimal culpability in the alleged racketeering activities. The Government opposes the motion, arguing that Neace - other than merely speculating - has failed to (1) specify or demonstrate any actual prejudice, and (2) fully understand the appreciate the ability of the jury to distinguish the respective roles of the members of this alleged conspiracy.

An indictment may charge two or more defendants together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting

an offense or offenses." Fed. R. Crim. P. 8(b).[2] There is a preference within the federal system for

a joint trial of those defendants who are indicted together. *Zafiro v. U.S.*, 506 U.S. 534, 537 (1993)

(joint trials promote efficiency and avoid inequity of inconsistent verdicts).

Generally speaking, courts construe this federal rule of criminal procedure broadly in favor

of a joinder. 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure:

Criminal 4th § 141 (4th ed. 2008); *See also, U.S. v. Swift,* 809 F.2d 320, 322 (1987) (Fed. R. Crim.

P. 8(b) should be construed broadly in light of protections afforded by Rule 14(a)). Nevertheless, a

joinder is appropriate if there exists a sufficient nexus between the defendants and the accused acts

or transactions. *U.S. v. Davidson,* 936 F2d 856, 861 (6th Cir. 1991).

Even in those cases in which the joinder of two or more defendants is deemed to be appropriate

under Rule 8(b), a court nevertheless possesses the power to sever a trial in order to avoid undue

prejudice. According to Fed. R. Crim. P. 14(a), a court may enter an order of severance if a single

trial "appears to prejudice a defendant or the government."[3] *Id*. Notwithstanding, a severance is an

extraordinary remedy which should be utilized with great caution and care. *U.S. v. Franklin et al*, 415

F.3d 537, 556 (6th Cir. 2005). In order to justify such a decision, it should be incumbent upon a court

to find that there is a "serious risk" which would (1) compromise a specific trial right of one of the

---

[2]Rule 8(b) reads as follows: "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count."

[3] Rule 14(a) provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

defendants; or (2) prevent the jury from making a reliable judgment about guilt or innocence.  *Zafiro,*

*supra* at 539.  When attempting to resolve a motion for severance under Rule 8(b), a trial court is

encouraged to examine the content of an indictment and, after having done so, accept its allegations

as being true.  *United States v. Liss,* 265 F.3d 1220, 1228 (11th Cir. 2001); *United States v. Levine,*

546 F.2d 658, 663 (5th Cir. 1977).

Here, the Government has charged Neace and his Co-Defendants with being knowing

participants in an activity which was deemed to be unlawful according to the terms of the Racketeer

Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961 et. seq.  According to the grand

jury, he and the other participants in this alleged conspiracy are members or associates of the AOA.

The indictment has characterized their collective conduct as a "Violent Crime In the Aid of

Racketeering" pursuant to 18 U.S.C. § 1959(A)(6).  This fact distinguishes Neace's case from the

typical non-RICO defendant who seeks to obtain a severance under Rule 8(b).  Several years ago, the

Third Circuit observed,

> Rule 8(b) provides substantial leeway to prosecutors who would join
> racketeering defendants in a single trial. The rule permits joinder of defendants
> charged with participating in the same racketeering enterprise or conspiracy,
> even when different defendants are charged with different acts, so long as
> indictments indicate all the acts charged against each joined defendant (even
> separately charged substantive counts) are charged as racketeering predicates
> or as acts undertaken in furtherance of, or in association with a commonly
> charged RICO enterprise or conspiracy.

*United States v. Irizzary,* 341 F.3d 273, 289 (3rd Cir. 2003).  Thus, the RICO framework of this now-

challenged indictment satisfies the basic requirement of Rule 8(b), in that the accused criminal conduct

stems from "the same series of acts or transactions constituting an offense."  *See also, United States*

*v. Warner,* 690 F.2d 545, 551 (6th Cir. 1982) ("It is well settled that joinder is proper under Rule 8(b)

where an indictment charges multiple defendants with participation in a single conspiracy").

Accordingly, the Court concludes that Neace's contention (to wit, that his joinder with the

other Defendants is inappropriate under Rule 8(b)) is without merit.

III.

Neace also urges the Court to grant a severance which would enable him to avoid the risk of undue prejudice under Fed. R. Crim. P. 14(a). According to this Rule, "[i]f the joinder of . . . .defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Neace correctly notes that there are some circumstances whereby the joining of defendants together in a single trial would be improper. He points out that the probability of an impermissible spillover warrants the requested relief from a joint trial because there exists the realistic possibility of his conviction merely on the basis of guilt by association. Yet, aside from making conclusory allegations of prejudice, Neace has failed to identify any particular aspect of his Co-Defendants' respective cases which could, arguably, adversely affect his presumption of innocence.

A defendant - such as Neace - has the burden of proving prejudice under Rule 14(a). Wright & Liepold, *supra,*, Federal Practice and Procedure: Criminal 4th § 223 ("The burden is on the defendant to make a strong showing of prejudice to obtain the relief permitted by Rule 14."). A review of the pleadings in this case clearly demonstrates that he has failed to satisfy his burden of providing proof of prejudice. Without more, his argument for severance under Rule 14 must fail.

For the reasons that have been set forth above, Neace's motion for severance must be, and hereby is, denied.

IT IS SO ORDERED.

Dated:  April 14, 2008                                  s/ Julian Abele Cook, Jr.
          Detroit, Michigan                            JULIAN ABELE COOK, JR.
                                                       United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 14, 2008.


s/ Kay Alford
Case Manager